Good morning, Your Honors. May I please the court? My name is Victor Rodriguez. I represent David Green in this case. We are here. It's an excessive force claim involving the shooting of a mentally ill individual who, at the time he was shot, was not an immediate threat of any person or any officer. The district court granted summary judgment in favor of Officer Lada, the individual officer who shot and killed David Green II, the son of my client, David Green Sr. On behalf of Mr. Green, we filed an appeal of this summary judgment order on the grounds that the court improperly weighed the evidence in granting summary judgment. Just a brief recount of the facts. On the morning of February 22, 2016, David Green, my client, was in his home in a small community in Mission, Texas, called Wagon City South. His son, David Green II, was living with him at the time. He had moved down from Michigan. His son had a history of schizophrenia and bipolar disorder. At the time, he was not taking his medication, and that morning suffered an episode, a schizophrenic episode. There was an altercation between Mr. Green and his son, David, and Mr. Green called the police, Mission Police, for assistance. In doing so, he advised Mission Police that his son had been acting violently, that his son was a schizophrenic patient or had a mental health disorder, including schizophrenia and bipolar disorder, and also that his son had been off his medication. He also advised them that his son had been acting violently and had an axe and also a machete. Officer Cabrera from the Mission Police Department was the first officer on the scene. He arrived on the scene and immediately encountered David outside of the Green residence. David, Officer Cabrera immediately pulled his weapon. He saw that David had a machete with him and was pacing back and forth and acting erratically. He yelled commands to David to drop the weapon, and David complied with that command. Again, this is an individual suffering a schizophrenic episode at the time. He dropped the machete, but he got into a vehicle, his father's truck, and attempted to flee the scene. At that point, Officer Cabrera positioned himself in a way where he was in front of the vehicle. There's a dispute about whether David tried to run over Officer Cabrera or whether he tried to get around him. What's clear from the video evidence is that Officer Cabrera was either barely sideswiped or avoided impact, but did fall. As David's vehicle left the area, Officer Cabrera shot at the vehicle a number of times from behind as it fled. By this point, there are more officers on the way, and Officer Cabrera proceeds to chase David throughout this neighborhood. It's a small mobile home community, maybe 20 acres, maybe 30 acres tops. The chase began, Officer Cabrera was following David throughout the neighborhood. Mr. Rodriguez, can I stop you for a minute? Obviously, this is a qualified immunity decision that we are reviewing, so you need two things. One is a violation of a constitutional right, and the other is that that violation of the right was clearly established. Correct. When are you saying in this series of events, and there's gunfire more than once, when did a constitutional violation first occur? You had a fairly dangerous situation with this vehicle being driven. Stopping it with firearms, are you saying trying to stop it with firearms, are you saying that was a constitutional violation? Or has it all come down to what was happening after the truck hit the tree, and those events were a fairly short period of time? Is that the constitutional violation? That's correct, Your Honor. There's a question about whether Cabrera's initial shots were appropriate or not. We didn't appeal that decision. The court granted a motion to dismiss in the early part of the case, and we decided to focus on when after the truck hits the tree. So after this chase, it lasts several minutes. Throughout the chase, it's clear through the videos that David's not trying to hit anybody. He avoids police officers. He goes around certain units. It's clear that he's just trying to drive around and get away from the police that were shooting at him. Eventually, he comes to a barricade and stops the vehicle. This is all in the video, and decides to try and go around it. But in doing so, he runs into a big tree with a very severe impact. The witnesses that saw it all agree it was a very severe impact. It caused significant damage to the truck. The airbags were deployed. The horn was blaring. The hood was pushed in. There was tree debris on the hood and blocking the windshield. One of the witnesses described it as the impact was so severe, the rear end of the truck lifted up and also saw David lift out his seat. So yes, Your Honor, at that moment, it's our contention that the facts changed. That David was no longer fleeing. That David was no longer an immediate threat to anybody because the truck was disabled. Well, would he have been a threat potentially, subject to law enforcement taking action, if he was trying to reverse the truck and start this over again? I think that would depend on the facts at the time. I'm asking you first, and I'm not trying to pin you down by any means. I'm just trying to get your understanding of this case. So if, and I'm not saying you agree to this, if it would have been a potentially continuing dangerous situation to the officers or others, if they were trying to back up the truck, using deadly force to stop that, are you saying that might have been permitted, but the facts are disputed as to whether that was going on? Correct, Your Honor. I do think it would be a closer call. It's a fact. What do you have versus what did also, I think you have at least one officer, maybe it was Officer Lara, saying that he was trying to back the truck up. You can correct me on who said that. And what do you have that makes that a dispute? Well, I mean, the fact that the vehicle was essentially inoperable, right? Everybody that saw the impact agrees that the impact of the truck caused severe damage. Officer Lara obviously is interested witness. Nobody else, neither Officer De La Rosa or Cabrera could see into the vehicle. There is, the court gave a lot of credibility to an individual named Gary Reinhart, who was about 120 feet or 40 yards, he testified, away from the scene and inside a clubhouse, and also had an obscure view. He testified that he was inside a clubhouse, his view was of Officer Lara's back, and he had to look over Officer Lara's shoulder into the truck. And then even getting past that, he agreed that the truck, that he could not see below the chest level of where David Green was. Mr. Rodriguez, just last year, we reaffirmed in a case called Cole, I've forgotten the rest of the name of it, and I've misplaced my paper, but in, I think it's Cole v. Carson, we reaffirmed the rule of Gardner, Tennessee v. Gardner, and that case, and our case, holds that when the officers are not in any danger, and when they're trying to, they're chasing or about to apprehend persons, they, before they use deadly force, they must issue a warning, and give the person a chance to, to stop fleeing or stop resisting. And this is the most disturbing thing about this case is, I think you could argue that Officer Lara proceeded to go to the vehicle after it had been stopped, it was immobile, although he said he, he thought he was trying to put it in rear, in rear gear and move out, but during that period, it seemed to me, I, we looked at the video, and I've read the judge's reasons and everything, but if you give the benefit of inferences to your side, you could argue that, that no one issued such a warning, or Lara proceeded to shoot four, three or four times with his pistol into the vehicle, and I think Officer De La Rosa shot through one window too. That's correct, your honor. Also, Officer Garverda shot after the impact as well, I think he, he testified that he was trying to shoot at the tires to disable the vehicle. That's another interesting point. So what's the legal error that you're alleging by the district court? So the legal error is, is very simple, your honor, it's that the court improperly weighed the evidence, so she, it's very similar to a recent case, same court, Judge Alvarez. What prong of qualified immunity did the district court rule on? So it's the second prong, right, whether there was an immediate threat of harm to, to the court or to an individual surrounding. I thought the second prong of qualified immunity is that any alleged violation is clearly established. Well, she, well, okay, so my apologies, I'm getting into whether there, there was a, this is a three-prong analysis about whether the use was justified and according to a ordinary or, I'm sorry, objectively reasonable officer. So she, you agree there has to be a clearly established violation? Exactly. So there is, so, so when you're blue brief, do you challenge or do you establish that clearly established law? Well, the, it isn't challenged. The point is that the court had to find, had to disregard factual, genuine issues of fact to get there. In other words, she made factual determinations that there was no immediate harm. And because, because she found- The traditional way to win your case, if you're going to win, is when the district court says there's no clearly established law, you have to identify the clearly established law. Right. So there is- Here in your blue brief, you talk about the clearly established law. So there is a clearly established law that it's, it's a, it's a constitutional violation for the court to, or for an officer to shoot an individual when he's not an immediate threat to either himself or to his, or to people around him. So let me pull that. Your Honor, yeah, because that wasn't really an issue. The court, the focus of our appeal was on the factual findings by the court in order to find that there was no- I think that's the problem with the appeal is you've not actually appealed what the district court did. Well, we did. The district court said there's no clearly established violation. And I'm looking into your blue brief. I don't even see the words clearly established anywhere in your blue brief. If under the, as the facts as the court found, Your Honors. So our point is the court made inappropriate factual conclusions. And, and by doing that, was able to justify this position of hers. It's, you know, that there was no clearly established law, but it's clear under the circuit president that you cannot shoot an individual after he is no longer a threat to either the officers or the general public. See, I'm running out of time. Are you relying on Tennessee v. Garner then? Is that sort of the idea? Your Honor, it is Tennessee v. Garner. It is also- What do you make of the fact that the Supreme Court's told us Tennessee versus Garner establishes the rule at a way too level, way too high a level of generality. You need a more specific case than the generic standard stated in Tennessee v. Garner. Well, I think this- Talk about all of that, for example. Yes, Your Honor. I think the circuit has found and also held in a recent case that also came out of Judge Alvarez's court, that it doesn't have to be so specific, right? That if it's clear based on the precedent that shooting an individual under the circumstances is- So what's the precedent you're citing? Give me one second. My struggle is your blue brief doesn't talk about clearly established violation at all. And if you had, then we could have a more interesting conversation. My concern is you haven't actually challenged what the district court did. Well, we did. I respectfully disagree with that, Your Honor, because- What page of the blue brief talks about clearly established? I have it here. Well, if the court is saying that it's not- What page? That's fine. Hold on one second. I just want to know, but where am I going to see this discussion? Well, I would suggest you can have time to look that up for us. Yes, Your Honor. Since you're out of time. And once you- My suggestion, again, is that he'd be allowed to do that when he comes back on rebuttal. Absolutely. Thank you, Your Honor. Thank you, Mr. Rodriguez. Ms. Scott, you're up next. You may proceed. Good morning, Your Honors. May it please the court. Heather Scott on behalf of Appali Affirm the district court's finding of qualified immunity on behalf of Officer Javier Lata. Affirming the district court's finding on qualified immunity is appropriate in this case because the record clearly establishes that Officer Lata's actions and his use of deadly force were objectively reasonable under the totality of the circumstances that he was facing at the time of this incident. The crux of- Would you agree, though, that if the truck is a complete stop and he's no longer posing any risk of leaving or any sort of danger, would you concede that there's no basis for shooting him at that point? I would agree if the facts were undisputable that that was the case. I would agree with that, Your Honor. Okay. Yes. Isn't that the fact dispute in this case? No. The one side says that the car was completely stopped. He wasn't doing anything. The other I think I got that backwards, but one side says that he was stopped. The other side says he's not stopped. That sounds like a fact dispute. You're correct, Your Honor. The appellant is claiming that Mr. Green was motionless and the vehicle was inoperable. And the court, the correct standard under summary judgment standard is to view the facts in the light most favorable to the non-movement. However, the court must also consider the entire record and also consider undisputable facts that contradict the plaintiff's contentions. And that's what we have here in this case. When you make that jump from where you started to undisputable facts, are you leaving out the drawing of inferences favorable to the non-mover? No, no. It seems to me that you are and the district judge may have been. It seems like that happens in almost every one of these cases. Well, Your Honor. Because it's this fine summary judgment standard, but then proceeds to ignore it. Well, Your Honor. And ignores the inferences. It seems to me that this case cries out for a possible application of what we decided in Carson v. Cole, which reaffirmed Tennessee v. Garner, that you could, by favorable inference of circumstances and facts, argue that Officer Laura proceeded without warning to shoot the man in the vehicle. And when he presented no danger to the officers or anybody else. I understand where you're going with that, Your Honor. However, in Cole v. Carson, the facts of that case are clearly distinguishable because here we do have evidence on the record that shows that Officer Laura did give numerous verbal commands and warnings before he opened fire. And I cited that to the record. All I heard in reviewing the video was that he and other officers said, stop, get out. Is that sufficient? Warning, I don't want to shoot you. If you don't stop, I'm going to shoot you. We're going to use deadly force against you. Again, Your Honor, the audio is what we hear with the verbal commands, but he also had his weapon drawn that the suspect could clearly see and witnesses also saw. And that is uncorroborated. Also, I'm sorry, it's corroborated. I'm sorry. Let's go back. I also want to take a step back. I also want to, I corrected myself. I also want to take a step back though and look at everything that Officer Laura knew at that moment in time. And let's go back to the facts of what he encountered when he first got to the scene. Now, he had already overheard. Just to clarify on Cole, were there, in Cole, were there any warnings whatsoever in Cole? The facts is the plaintiffs presented them in Cole. There were no warnings given. So that's where I am distinguishing. And in addition, in Cole, the theory was he didn't even know the officers were there. Correct. Correct. Is there any doubt in this case that he knew the officers were there? There is no doubt. He knew the officers were there. In fact, he had already struck Officer Lotta's police unit while he's in this situation. You had to stretch, get out, stop, get out into a warning before you used deadly force. I don't think the case law is very clear that it has to be that specific, Your Honor. I believe that the warnings that were given to stop and get out are commands, verbal commands for the suspect to stop the activity, the conduct that the officer believes is threatening. And coupled with everything that he had, the officer had already encountered with this suspect. What did he believe was threatening? At that moment in time, he felt that- He fired four shots. He knew he had no weapon. There's no evidence on the record that would confirm that he never knew there was a weapon in the vehicle. But that was an issue that wasn't even touched upon in the briefing and even at the fact that there was not a weapon inside. So that also adds into what's going on in his mind, making that split second decision after everything that he had already encountered with the suspect at that time. Again, he had already struck the unit. As I recall, all he said was that he thought that Green was attempting to put the vehicle in rear drive and back out. Correct. Correct. He did. He did view that. He saw a weapon or anything like that. He didn't pull it. That was the only evidence of danger. Your Honor, this was a Ford F-250 truck that was already speeding around in dangerous speeds in an elderly community. This is a winter Texan retirement community park. You even see an Officer Lada's dash cam unit, an elderly gentleman in a golf cart strolling along the street. There's also an officer- What's the evidence against you? What's the evidence that Mr. Green was trying to comply? There is none, Your Honor. There is none. And that's what- Just to be fair, what's the other side pointing to? I will address what the other side is pointing to. They rely heavily on the testimony of Ms. Shirley Netherton. I want to isolate what's going on in the case. Is that it? Is there anything besides the testimony that they're relying on, or is it just that? That's the majority of it, Your Honor. They do touch upon other- I'd call it mischaracterizations of testimony, but I dissected each fact that they contend is in their favor. And it's clear that there's undisputable facts on the record that disputes what they're saying and contradicts the appellant's contentions in this case. We have undisputed testimony, uncontradicted testimony of an independent witness, Gary Reinhart, which the appellant in his brief completely ignores and doesn't even touch upon in the district court level in their response to our motion for summary judgment. And I will say, Ms. Netherton's testimony that they so heavily rely upon, they didn't even attach it on the record in their response. Had it not been that for me bringing it up in reply to their response, her testimony wouldn't even be in the record. So I even gave that to them in the record to show that even with Shirley Netherton's depo testimony that they claim is so strong, it's still not enough to defeat- it's not enough to show the burden that they have that Officer Lada's actions were objectively unreasonable at the time. Scott, let me ask you, what is the potential or the target that your friend on the other side needs to hit with his evidence? It seems to me that the situation of this truck against the tree, it's no longer moving forward and cannot move forward. The fellow may or may not be immobilized. He may or may not be reversing his truck to start the maneuvering again, and maybe it's impossible to reverse the truck to maneuver again in light of the crash. It seems to me that what you need to say is that there's no genuine dispute of material fact, is that not all reasonable officers would have known that in that situation, Mr. Green was no longer a threat to themselves or others. Otherwise, the use of deadly force would be appropriate. I may have put some things backwards. I'm trying to forget where I'd said it but nonetheless, you need to show that there was at least to a reasonable officer a sense that this incident was not over and he still was a threat. So what is the evidence that's undisputed that would show that, support that? Sure, your honor. Well, you have Officer Lada's account of what he believed, but of course he's an interested witness. But then we go with Mr. Gary Reinhart's testimony and he also corroborates Officer Lada's account of what happened. He heard the verbal commands, he saw the suspect moving in the vehicle, looking like he was attempting to flee. The fact that the truck reversed after the shots were fired. Stop that. I've seen that in the briefs and I guess a quote of the testament. What does it mean that he saw a movement that somehow triggered in his mind that he was trying to get the truck going again? There's a lot of reasons to move around. I mean, that connection seems strained to me between he's moving around that therefore meant he was trying to get the truck going again. The connection and how it would frame in an officer's mind of why that would pose a danger? It seems to me is what his moving around might mean. How do you get the link that he was trying to get the truck moving again from the mere fact he was moving around inside the cab? Well, you have officer again, you have Officer Lada's account that he could see the motions that appeared that he was moving the vehicle, the tires spinning as he was trying to attempt. It looked like he was trying to reverse the vehicle. And you also have Gary Reinhart, an independent witness that said it was clear that that guy was trying to get out of there. We even have Shirley Netherton in her deposition testimony that she says it looked like he was trying to leave the area. So we have this person that had already gone around the trailer park and almost hits an individual. I think you see it in Officer Cabrera's dash cam. And it's a danger. It is a potential danger not only to the officer, that's a Ford F-250 truck, but also to the other elderly residents around the area in that community. So there's the connection that I make in what's going on in the officer's mind. And at that moment, he has very few seconds to die. I think you're adding some things that aren't in the record. What would that be, Your Honor? I will try to clarify. I thought you said Ms. Netherton said he was trying to get out of there. There is testimony and it was, you know, what appellant gave in his brief was piecemealed. But there's later portions in her deposition testimony where she says it is in reference to what she told the Texas Ranger who visited her house shortly thereafter for a video recorded statement. That is referenced in her deposition testimony. So two, a few days, I don't know, I'm not going to say two, but a few days shortly after the incident, she does say that it appeared he was trying to leave the area. And that is in her wheel spinning after the truck was immobile. I don't remember that being in the record. Well, again, the wheel spinning was Officer Lada's account, so that would be in his depo testimony. And Ranger Calloway, I believe, made reference to there was holes in the ground that it appeared that it looked like the truck was making motion, the wheels. And that's Ranger Calloway's testimony. But I will look for the reference to Mrs. Netherton's depo testimony. Did I hear you correctly? You're saying Netherton said that he was trying to flee? I said that in her deposition testimony, I asked her questions about a recorded interview, a video interview that she did with the Texas Rangers a few days after the incident in question. In that recorded interview, she told the Texas Ranger that it looked like he was trying to get away. And what page of her depo? I'm trying to look for that in my brief. And I know that I did cite to it because I did attach it on the record in response, in our reply, to plaintiff's response to our motion for summary judgment. You still have that? Yes, Your Honor. And to save the court time, I would request that I'd be able to submit a letter brief to point to that specific reference on the record so that it's clear that I'm not, and share it with opposing counsel, so it's clear that I'm not making a misstatement of anything that's on the record. Your point is, the other side has rebuttal time. Once you looked on his rebuttal, you can just speak up when he's finished. Sure. Okay. I will do that. The other information, Your Honor. I'm not going to allow that. Okay. I'm sorry. Pardon? I was asking if she could give us the page number of her brief when the other side's done. It gets out of hand. If I may, Your Honor, however you want me to do it, that's fine. Letter's fine. I don't want to. You have four minutes. Thank you, Your Honor. Most important that I want to make note of is, Judge Ho, you were correct that the appellant never addressed the legal requirements to defeat qualified immunity in their brief. Their challenge was as to the district court's analysis of the facts on the record of this case, but nowhere, no evidence that they provided, and nowhere in the record are there anything that contradicts the statements or the account of Officer Lada, and it falls in line with all of the other independent witnesses' accounts of the event and with the video recordings of the event. But the main question is whether it was objectively reasonable for Officer Lada to believe that Mr. Green was a threat to his safety or the safety of others in the near vicinity, thereby justifying his use of deadly force. And it's clear on the record that, yes, it was objectively reasonable. The district court correctly held that. So even taking plaintiff's version of what they think Mr. Green was doing, based on the undisputed facts on the record, his actions were objectively reasonable. And therefore, you know, the appellant didn't even make reference or try to argue that no reasonable officer would have known that firing at Green was prohibited by clearly established law, that those issues weren't even addressed. And I feel like they just never met the burden that they were required to do in establishing that Officer Lada acted objectively unreasonable. And that's the clear argument that we try to make throughout Officer Lada's brief, is that they simply never get there. They simply never get there. And there's plenty of evidence on the record to show that their account of what happened, the allegation that David Green was sitting there motionless, that the truck was inoperable, is not, is contradicted by the record evidence that we have. Mr. Reinhart's testimony that corroborates Officer Lada's account. We have dash cam video. We have the audio that is heard in the dash cam video. We have shaky testimony from Mrs. Netherton that I would argue, and I will get that in a letter brief to the citations, but I would argue even helps Officer Lada's account because she did not witness the entire incident. At one moment, she's in the front of her house. She goes into her house, goes out the side door. So there's no way she could have seen the entire incident as the appellant is claiming. And even if she came out at the time, it was not in the time enough to see what was transpiring. I believe the photos that are attached to the brief, appellant's brief, shows the vantage point that she was at and it was to the rear. There's no way that she could have seen what David Green was doing inside the vehicle. So it really calls into doubt the veracity of what Mrs. Netherton is claiming and what the appellant so strongly weighs their case on and is challenging the district court's findings. Again, we strongly feel that the district court in its 49-page opinion went thoroughly through every single fact that was raised by both parties and thoroughly addressed each contention and came out with the right decision. There was no contradictory facts that would assert or get near to the level of showing that Officer Lada's actions were objectively unreasonable. In fact, everything points to that his actions were objectively reasonable under the circumstances that he faced at that time. Thank you, Ms. Scott. You may submit a letter of brief, one page, giving us a citation. Thank you, Your Honor. Ms. Netherton's testimony, and I forgot who the other one was. And Mr. Rodriguez, you'll have five days to respond from that with a letter of brief. Thank you, Your Honor. Well, let me make sure. You're not suggesting any briefing. We just want a page number, right? That's all you're going to give us. Right. Okay. Let's make sure. Talking about a response, I was wondering what that was. Anyway, go ahead. Thank you, Your Honor. So just briefly to address Judge Ho's question, it's true. The blue brief does not mention qualified immunity case law. Our focus from the beginning is the court's inappropriate summary judgment analysis. In other words, in order to find that Officer Lada's acts were objectively reasonable, the court had to bend over backwards to make every inference possible in favor of Officer Lada. When, as the court is aware, the case law is actually the opposite, right? The court is- So if you're going to say the district court messed up, I'm going to look at the district court opinion. And it says at page 45, the court finds that plaintiff has pointed to no clearly established legal principle supporting your theory. That's based on her- Based on that clear holding of the district court, your blue brief doesn't talk about what clearly established legal principle the district court ignored. Well, the problem with that is that if you're looking at page 45 and it's by itself, the reason the court makes that determination is based on all the factual determinations that she made. In other words, this is an inherently factual analysis. The court improperly weighed the evidence in a summary judgment context. So moving past that, what is your best evidence that Mr. Green was complying and no longer fleeing? Shirley Netherton's deposition. She testified that she did see the shooting in multiple parts in her deposition. So I'm seeing on page 34 and 35 of her deposition, I didn't see inside the truck. She didn't see inside the truck. She saw the officer shooting. She saw, and that was a specific moment in time, right, that she didn't see inside the truck. Right, but she didn't see inside the truck. And then on page 46, this is Ms. Scott asking, you couldn't see exactly what the driver was doing inside the vehicle. Correct. She did say- The answer is no, I couldn't. She did say, your honor, that she saw, she witnessed the entire shooting, that she was by a tree, not on her porch, as the shooting was happening, that- She couldn't see inside the vehicle. Is that what she said? That's correct. And that's also true for everybody else, your honor. Everybody else has testimony, including Lada, that they couldn't see inside the vehicle. They couldn't see inside what Mr. Green was doing at the time. That's David Green, sorry. What's the evidence that the wheels were spinning?  In fact, if you look at Calloway's- Is there any testimony, is there any testimony that you got, Officer Lara's testifying the wheels were spinning. Correct. Any testimony that the wheels were not spinning? Ms. Netherton said that she didn't, never saw the wheels spinning. Officer Calloway agrees- What page was that? What page is that? I don't mean to slow you down. You can keep going. It's okay, your honor. Just give me one second. Page 18 of her depo. That's at record age 1534, I believe. Officer Calloway, Ranger Calloway, agreed that looking at the evidence afterwards in his deposition, he agreed that there was no tire marks. There is no evidence that the tires were spinning. There was no indentations in the grass at the point where the truck would have been, you know, against the tree. He did say there was some tire marks that were there after, that appeared after the truck reversed and hit Ms. Netherton's truck. But Officer Calloway agreed based on his review of his own file and the pictures in his deposition testimony, and that's Calloway at 221. The record citation is 364, but he agreed that there was no evidence of that. I'm sorry, I'm going to- You mentioned page 18. I see here, the testimony is there's trees, then all the people were parked out there. He couldn't get through. He was trying to get away. What does that mean, he was trying to get away? I don't, I, let me see what that says. So I agree with you, later it says tire spinning, any smoke coming out, no. Okay. But there's also, he was trying to get away. Yeah, I don't know what that means, your honor. Okay. Yeah. But again, all of the officers testified that the truck never moved, right? You have Cabrera, you have Lara, and you have De La Rosa testify that- Well, we know that from the video that the truck didn't move. I think the issue is he was trying to move. Well, and again, the only testimony that you have is, the only uninterested, disinterested testimony that you have is Reinhardt who my friend on the other side relies on heavily. But if you look at Reinhardt's deposition, his credibility is in question, right? He's standing 40 yards away behind officer Lara, looking into a tall truck that he agrees he can't see anything below chest level. He agrees his vantage point is obscured by Lara's in front of him, in between him and the truck.  And then again, had to look over a tall truck's door at the time. So he says he saw movement. He said he saw one particular movement and that's it. He agreed that after that one movement, he didn't see anything else inside the truck because he couldn't. So there's no evidence from anybody that they could see what David was seeing. Also, there's no evidence that anybody could reasonably believe that he had any weapons in the vehicle. The only weapon that he had, and again, going all the way back to the beginning, was a machete that he dropped on command. That's my time. Thank you all for your time this morning. I don't know if you have any questions. I really thank you. The case will be submitted. Thank you, counsel. We'll, after I confer with my panel.